UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PANAGIOTIS PANOUSOPOULOS,

        Petitioner,

v.                                  CIVIL CASE NUMBER 07-14797
                                  HONORABLE PATRICK J. DUGGAN

THOMAS BIRKETT,

        Respondent.
_____/

**OPINION AND ORDER
GRANTING PETITIONER'S MOTION FOR EXPEDITED CONSIDERATION,
BUT DENYING THE HABEAS CORPUS PETITION AND
PETITIONER'S MOTION FOR ORAL ARGUMENTS**

At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County
of Wayne, State of Michigan on February 3, 2009.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Panagiotis Panousopoulos ("Petitioner"), a state prisoner currently confined at Camp Lehman in Grayling, Michigan, has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. Also pending before the Court are Petitioner's motions for oral arguments and for expedited consideration. The Court has expedited review of Petitioner's claims and determined that Petitioner is not entitled to habeas corpus relief. Accordingly, Petitioner's motion for expedited consideration is GRANTED, but his habeas corpus petition and motion for oral arguments are DENIED.

### I.  Background

Petitioner was charged in Oakland County, Michigan with assault with intent to commit murder, unarmed robbery, and carrying a concealed weapon.  The charges arose from an incident during which Petitioner pulled his former girlfriend by her hair, choked her, and repeatedly struck her on the face with his closed fist.  He also took keys to the vehicle that she had been driving.  The police found a concealed firearm in Petitioner's car shortly after the incident with his former girlfriend.

On the day set for trial (May 19, 2003), Petitioner pleaded no contest, as charged, to:  assault with intent to commit murder, Mich. Comp. Laws § 750.83; unarmed robbery, Mich. Comp. Laws § 750.530; and carrying a concealed weapon, Mich. Comp. Laws § 750.227.  The plea agreement called for a sentence at the bottom of the sentencing guidelines, as ultimately calculated by the trial court.  Defense counsel estimated that the guidelines score could be as low as 51 months, but the prosecutor thought the lowest possible score would be 81 months.

At a hearing on June 5, 2003, Petitioner informed the trial court that he wanted to withdraw his plea and to have his attorney withdraw from the case  The trial court denied both requests and threatened to gag Petitioner if he did not keep his mouth shut.

On June 19, 2003, a different attorney entered an appearance for Petitioner and made an oral motion to withdraw Petitioner's no-contest plea.  The proceedings were adjourned so that the attorney could file a written motion to withdraw the plea.  The written motion was filed and denied at a hearing on July 9, 2003.  On the following day,

the trial court sentenced Petitioner to concurrent terms of 81 months to thirty years for the assault and robbery convictions and two to five years for the weapons conviction. The judgment of sentence subsequently was amended to fix Petitioner's maximum sentence for the unarmed robbery at fifteen years, not thirty years.

In an application for leave to appeal, Petitioner argued that (1) the trial court abused its discretion in refusing to permit him to withdraw his plea, (2) he was entitled to withdraw his plea on the basis of newly discovered evidence that the complainant recanted her earlier statements, and (3) the trial court failed to state the basis for the no-contest plea on the record. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented," *People v. Panousopoulos*, No. 257430 (Mich. Ct. App. Apr. 4, 2005), and on October 31, 2005, the Michigan Supreme Court likewise denied leave to appeal. *See People v. Panousopoulos*, 474 Mich. 906; 705 N.W.2d 128 (2005) (table).

Petitioner raised his habeas claims in a motion for relief from judgment. The trial court denied his motion after concluding that Petitioner's plea was voluntarily and understandingly made and that Petitioner had failed to establish actual prejudice from the alleged irregularities. The Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal the trial court's decision on the ground that Petitioner had failed "to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." *People v. Panousopoulos*, No. 275243 (Mich. Ct. App. May 30, 2007); *People v. Panousopoulos*, 480 Mich. 923; 740 N.W.2d 275 (2007).

3

Petitioner filed his habeas corpus petition on November 8, 2007. His claims are:

I. The petitioner's plea of no contest to the charged offenses was involuntary and a violation of his right to due process of law under the Fourteenth Amendment, because (1) it was a result of his receiving ineffective assistance of trial counsel in violation of the Sixth Amendment and (2) it was an illusory plea bargain; appellate counsel was ineffective for failing to raise these constitutional violations.

II. The petitioner was denied his constitutional right to due process of law under the Fourteenth Amendment where the court heard and denied in summary fashion all of trial counsel's last minute motions or objections and ordered the petitioner gagged when he sought to withdraw his plea; trial counsel was ineffective for failing to object to these denials of due process, and appellate counsel was ineffective for failing to raise these violations of due process, and the ineffectiveness of trial counsel, on appeal.

III. The trial judge should have disqualified himself from deciding the motion for relief from judgment, granted the rehearing, and referred this case to another judge.

IV. The petitioner is entitled to relief pursuant to 6.508(D).

In an answer to the habeas petition, Respondent argues that Petitioner's plea was voluntary and not illusory and that Petitioner's allegations of state-law error are not cognizable on habeas review. Respondent further alleges that Petitioner's claims about trial counsel are procedurally defaulted, waived, or without merit.

In the interest of efficiency, the Court will address Petitioner's claims on the merits rather than analyze whether the claims are procedurally defaulted. Federal courts need not address a procedural-default issue before deciding against the petitioner on the merits. *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d

212, 216 (6th Cir. 2003)).

## II.  Standard of Review

A state prisoner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on their merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000) (Justice O'Connor's majority opinion on Part II).  A state court's decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*, 529 U.S. at 413, 120 S. Ct. at 1523.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."  *Id.*, 529 U.S. at 410, 120 S. Ct. at 1522 (emphasis in original).  "[A] federal habeas court making the 'unreasonable application' inquiry should

ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*, 529 U.S. at 409, 120 S. Ct. at 1521. Section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455, 125 S. Ct. 847, 853 (2005) (quotation marks and citations omitted).

### III. Discussion

### A. The Plea

### 1. Voluntariness

Petitioner alleges that his trial attorney's ineffective assistance resulted in a no-contest plea that was involuntary and a violation of his right to due process. Petitioner contends that he pleaded guilty because his trial attorney was unprepared for trial.

A guilty or no-contest plea constitutes a waiver of several constitutional rights. *See Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Therefore, a plea must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970). "A plea entered because counsel is unprepared for trial is involuntary." *United States v. Moore*, 599 F.2d 310, 313 (9th Cir. 1979) (citing *Colson v. Smith*, 438 F.2d 1075 (5th Cir. 1971)).

On the day set for trial (May 19, 2003), defense counsel moved for an adjournment of the trial date. The grounds for counsel's motion were that he was unprepared for trial due to illness, that he had been unable to spend sufficient time with Petitioner in jail, and

that he had not received discovery materials. The trial court denied defense counsel's motion after noting that there had been one adjournment in the trial date and that defense counsel was given ample time to prepare for trial. The trial court also noted that defense counsel's recent difficulty in meeting with Petitioner was brought on by Petitioner's own misconduct on bond, which necessitated revoking bond and sending Petitioner to the county jail.

Regarding counsel's preparation, the record indicates that defense counsel had an appointment with Petitioner on November 22, 2002, and appeared in court with Petitioner on December 18, 2002, and January 15, 2003. At the December 18 hearing, the trial court stated that counsel was an excellent attorney.

Some discovery problems were unresolved as of the date for trial. However, the prosecutor agreed to make a 911 tape available to defense counsel if the tape was preserved, and the trial court afforded defense counsel an opportunity to view certain photographs. The trial court also stated that copies could be made of the photographs. The prosecutor indicated that she had done background checks on eyewitnesses and that none of them had criminal records. She was able to provide defense counsel with the criminal histories. As for the gun found in Petitioner's car, the trial court offered to conduct an immediate hearing on the issue so that there would be no delay in commencing trial.

As to the plea, Petitioner's own comments at the proceeding on May 19, 2003, belie his allegation that his plea was involuntary and prompted by his attorney's lack of

preparation. He stated that he was satisfied with his attorney's advice, and when asked whether anyone had threatened him to induce him to plead no contest, he answered, "Not directly." The trial court then said, "Pardon?" Petitioner responded, "No, sir." Petitioner also stated that it was his own choice to plead no contest, and he claimed to understand that he was forfeiting the right to assert that his plea was the result of undisclosed promises and threats. The trial court was satisfied that Petitioner's plea was understanding, voluntary, and accurate. (Tr. May 19, 2003, at 11, 15-17, and 19.)

This Court likewise concludes that Petitioner's plea was voluntary and intelligent. Although defense counsel might have benefitted from additional time to prepare for trial, Petitioner's plea allocution contradicts the contention that he was coerced or pressured into pleading no contest. *See United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). His "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977).

### 2.  Illusory

Petitioner alleges that his plea bargain was illusory and conferred no real benefit because there was no reduction in the charges. A plea agreement is entered into involuntarily and unknowingly if the defendant is unaware that the prosecution's promise is illusory. *United States v. Randolph*, 230 F.3d 243, 250-51 (6th Cir. 2000). Although Petitioner was not offered a reduction in the charges in return for his plea, the parties believed that he would obtain a more lenient sentence if he pleaded no contest. The probation department calculated the minimum sentence under the sentencing guidelines at

126 to 210 months, but the prosecutor was willing to accept a minimum sentence as low as 81 months or even 51 months if the trial court agreed with defense counsel's view of the offense variables. The sentence that Petitioner ultimately received was less than what it likely would have been if he had gone to trial, been convicted, and sentenced under the guidelines as calculated by the probation department. The Court therefore rejects the contention that the plea bargain was illusory.

### 3. Appellate Counsel

Petitioner alleges that his appellate attorney was ineffective for failing to raise the foregoing issues on appeal. Although Petitioner's first appellate attorney did not assert that the plea bargain was illusory, counsel did argue that Petitioner should have been permitted to withdraw his plea due to his trial attorney's unpreparedness. The omitted issue about the plea bargain being illusory was not clearly stronger than appellate counsel's argument that the complaining witness recanted her incriminating statements. Therefore, appellate counsel was not ineffective for failing to raise Petitioner's claim about an illusory plea bargain. *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (quoting *Smith v. Robbins*, 528 U.S. 259, 288, 120 S. Ct. 746, 765-66 (2000)).

### B. The Trial Court's Denial of Motions and Threat to Gag Petitioner

Petitioner alleges that he was denied his constitutional right to due process of law when the trial court heard and denied his last-minute motions and objections in summary fashion and ordered him to be gagged when he sought to withdraw his plea. Petitioner also contends that trial counsel was ineffective for failing to object to these alleged

denials of due process, and appellate counsel was ineffective for failing to raise the issues on appeal.

### 1.  Due Process

"The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S. Ct. 779, 783 (1914)).  On the day set for trial in this case, the trial court denied several defense motions.  The court denied a motion in limine regarding a gun found in Petitioner's car because the evidence was probative of Petitioner's intent on the assault count and was directly related to the concealed weapon count.  The court nevertheless offered to hold an immediate hearing on other issues pertaining to the gun.

The court denied a motion to quash the charges after stating that it had read the transcript of the district court hearing and found no mistake in the bindover.  The court carefully considered defense counsel's reasons for wanting an adjournment in the trial date.  The court also addressed counsel's concerns about the discovery materials that had not been made available to him.  (Tr. May 19, 2003, at 3-10.)

Petitioner was afforded notice and an opportunity to be heard on his motions, and the trial court adequately handled his motions.  The summary denial of his motions did not deprive him of due process.

### 2.  Gagging Petitioner

On June 5, 2003, Petitioner orally moved to withdraw his plea and to have his attorney removed from his case before sentencing.  The trial court refused to grant

Petitioner's requests, but Petitioner continued to argue with the court. The trial court then threatened to gag Petitioner if he did not keep his mouth shut. Petitioner persisted in arguing that he did not have competent counsel. The trial court disagreed and ordered a court officer to gag Petitioner. (Tr. June 5, 2003, at 6-8.) No further proceedings were conducted in the case on that day.

Even if the Court were to assume that Petitioner was actually gagged at the proceeding on June 5, 2003, "[e]rrors resulting from the use of physical restraints are subject to harmless error analysis." *King v. White*, 839 F. Supp. 718, 726 (C. D. Cal. 1993); *see also Ruimveld v. Birkett*, 404 F.3d 1006, 1013 (6th Cir. 2005) (stating that "there does not appear to be a clearly announced rule, in a Supreme Court holding, that harmless error analysis should not be applied to shackling cases"). The alleged constitutional error in this case was harmless because Petitioner was represented by a different attorney by the next time he appeared in court (June 19, 2003), and he was able to file additional motions to withdraw his plea. In light of the harmlessness of the gag order, defense counsel was not ineffective for failing to object to it, and appellate counsel was not ineffective for failing to raise the issue on appeal.

### C.  Judicial Bias

Petitioner asserts that the trial court should have disqualified itself from deciding his motion for relief from judgment and referred his case to another judge pursuant to Michigan Court Rule 2.003(C)(3). Petitioner filed a complaint about the trial judge with the Judicial Tenure Commission, and he criticized the judge in a letter sent to the judge.

A judge's judicial rulings almost never support a finding of bias. *See Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994). Opinions formed by a judge on the basis of facts introduced during current or prior proceedings do not support a bias or partiality motion unless the judge's conduct reveals such deep-seated favoritism or antagonism that fair judgment is impossible. *Id.*, 510 U.S. at 555, 114 S. Ct. at 1157. The test is whether "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588, 84 S. Ct. 841, 849 (1964).

Nothing in the trial court's decision on Petitioner's motion for relief from judgment suggests that the trial court was biased against Petitioner. The court reviewed Petitioner's arguments in light of the record and the appropriate standard.

Petitioner points out that, on December 18, 2002, the trial court said to him, "[I]f you're convicted, don't forget, I will be sentencing [you]." However, this comment was made in the context of a pretrial motion to revoke bond, which was based on twenty-four violations of the conditions of bond. The trial court was warning Petitioner not to violate the conditions of bond again.

Petitioner filed his post-conviction motion for relief from judgment years later. He has failed to show that the trial court was so biased against him that the judge was unable to fairly decide the motion. Petitioner's bias claim lacks merit.

### D. Trial and Appellate Counsel

Petitioner's fourth and final claim alleges that he is entitled to relief because his trial and appellate attorneys were ineffective. Petitioner alleges that his trial attorney provided incorrect advice regarding the sentencing guidelines and the consequences of going to trial. He contends that his appellate attorney was ineffective for failing to challenge his trial attorney's ineffectiveness.

To prevail on his claim, Petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In guilty plea cases, the "performance" prong requires showing that defense counsel's representation fell below an objective standard of reasonableness or was outside the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56-59, 106 S. Ct. 366, 369-70 (1985). The "prejudice" prong requires demonstrating that defense counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.*, 474 U.S. at 59, 106 S. Ct. at 370. Petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

The record does not support Petitioner's contention that his trial attorney's advice rose to the level of deficient performance. Although a subsequent defense attorney thought it was highly unlikely that the trial court would score the sentencing guidelines at 51 months, counsel agreed that the guidelines could have been scored at 51. And the trial court stated that defense counsel had advanced viable arguments in favor of a guidelines

13

score of 51.  (Tr. July 10, 2003, at 7-8.)

Furthermore, during the plea proceeding, Petitioner acknowledged the discrepancy in how defense counsel and the prosecutor scored the guidelines.  The fact that his attorney may have underestimated the sentencing guidelines did not justify withdrawing his plea because he was made aware that his attorney's estimation was not binding on the trial court.  *United States v. Stephens*, 906 F.2d 251, 254 (6th Cir. 1990).

The Court concludes that defense counsel's allegedly incorrect estimate of the sentencing guidelines did not render Petitioner's plea involuntary or unintelligent.  Therefore, Petitioner was not prejudiced by his attorney's allegedly incorrect estimation.

Nor was Petitioner prejudiced by his attorney's assessment of the risks of going to trial.  The evidence against Petitioner was substantial, and the trial court ruled that evidence of Petitioner's other crimes or wrongs could be admitted against him if he went to trial.  Although Petitioner contends that the complainant recanted the charges against him, she failed to appear at the hearing on Petitioner's motion to withdraw his plea on July 9, 2003.  Even if she would have recanted her accusations at trial, the trial court ruled that the prosecutor could produce an expert witness to explain the behavioral patterns of victims.

The record does not support the contention that trial counsel's performance was deficient and prejudicial.  Therefore, trial counsel was not ineffective, and appellate counsel was not ineffective for failing to raise a meritless issue about trial counsel.  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

## IV. Conclusion

For the reasons set forth above, this Court holds that the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to, or an unreasonable application of, Supreme Court precedent.

Accordingly,

**IT IS ORDERED** that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Dkt. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's motion for expedited review [Dkt. 12] is **GRANTED**, but his motion for oral arguments [Dkt. 13] is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
    Panagiotis Panousopoulos, No. 458794
    Camp Lehman
    5135 Hartwick Pines
    Grayling, MI  49738

    William C. Campbell, Assistant Attorney General